UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIGO ADR AMERICAS, LLC,<br>                              Plaintiff,<br>v.<br>OEM LOGISTICS, LLC, et al.,<br>                              Defendants. | Case No.:  23-cv-2219-AGS-MMP<br>**ORDER GRANTING IN PART MOTION TO DISMISS (ECF 8)** |

In its motion to dismiss, the defense argues that plaintiff fails to state a claim of trade-secret misappropriation and that many causes of action are preempted. The Court agrees that five of the state-law claims are preempted.

## BACKGROUND

Plaintiff TRIGO ADR Americas, LLC, is in the business of helping aerospace manufacturers timely fulfill their government contracts, sometimes worth "billions of dollars." (*See* ECF 6, at 2–3.) Specifically, TRIGO manages third-party suppliers for these contracts to "ensure on-time and on-quality delivery." (*See id.*) To that end, TRIGO developed both a proprietary process for vetting suppliers and an "intranet-based tool" that calculates the resources needed to manage each supplier. (*Id.* at 6–7.)

After leaving TRIGO's predecessor, defendants Steve Clarke and Jay Nicholas founded a competitor company, defendant OEM Logistics, LLC. (ECF 6, at 12.) TRIGO alleges that Clarke and Nicholas took "shortcuts to entering the market" and to "competing with TRIGO" by hiring two of TRIGO's former employees to obtain TRIGO's trade secrets. (*Id.*) That is, while still at TRIGO, those employees—defendants Eric Adler and Michael Thomson—purportedly connected personal USB drives to their work computers to download confidential trade-secret material, which they "copied," "diverted," and ultimately delivered to OEM. (*Id.* at 3, 13.) TRIGO contends there is no "legitimate business purpose at TRIGO ADR for any employee to use USB devices even minimally, and certainly not rampantly." (*Id.* at 14.) Thereafter, according to the amended complaint,

1

defendants "used TRIGO ADR's proprietary vetting process, its confidential set of criteria, guidelines, and factors to place suppliers in various tiers based on risk level, and its internal intranet-based tool zone analysis." (*Id*. at 23.)

TRIGO sued defendants for trade-secret misappropriation under both federal and California law, in addition to various state-law claims. (ECF 6, at 24–29.) Defendants move to dismiss all causes of action. (*See generally* ECF 8.)

## DISCUSSION

### MOTION TO DISMISS

"To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). The Court must accept "the factual allegations" in the first amended complaint "as true" and construe them "in the light most favorable" to the nonmovant. *See GP Vincent II v. Estate of Beard*, 68 F.4th 508, 514 (9th Cir. 2023).

**A.  Trade-Secret Misappropriation**

When a party charges both federal and California trade-secret misappropriation, courts analyze them "together because the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). A plaintiff states a claim for trade-secret misappropriation by alleging that "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (citation omitted); *see also* Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1839(5). Defendants only contest the second element.

### 1. *Clarke, Nicholas, and OEM*

According to the defense, TRIGO alleges only "six neutral facts" that do not provide even an "inference" of trade-secret misappropriation by OEM or by OEM's founders, defendants Clarke and Nicholas. (ECF 8, at 16.) The Court disagrees. Among other things, TRIGO alleges that (1) Clarke, Nicholas, and OEM "had access to the secret" vetting process and intranet tool through Adler and Thomson and that (2) TRIGO's vetting process and intranet tool "share similar features" with OEM's versions, which is sufficient to plead misappropriation. *See Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005); *see also Fujikura Composite Am., Inc. v. Dee*, No. 24-CV-782 JLS (MSB), 2024 WL 3261214, at *12 (S.D. Cal. June 28, 2024) (collecting cases showing that access and similarity are enough to plead misappropriation).

This conclusion is bolstered by the alleged suspicious timing. According to the complaint, after TRIGO's Adler and Thomson left for OEM, OEM's similar vetting system appeared. *See Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1172 (N.D. Cal. 2020) (holding that misappropriation allegations were "sufficient" when defendants "emailed trade secrets to their personal email accounts in the two- to three-month period before they resigned" and the emails pertained to "at least some" clients who also left for the new firm). Because both Clarke and Nicholas "formerly worked as high-level executives" for TRIGO's predecessor company (ECF 6, at 3), when they accessed "TRIGO ADR's trade secrets regularly" (*id*. at 9), they plausibly knew or had "reason to know" that OEM's new system was derived from TRIGO's trade secrets, *see Alta Devices*, 343 F. Supp. at 877. Taken together, these allegations pass the "low bar" to state a claim at the pleading stage. *See Iqbal*, 556 U.S. at 678.

### 2. *Adler and Thomson*

The allegations against Adler and Thomson are likewise sufficient. These defendants purportedly had access to TRIGO's trade-secret vetting process, and shortly thereafter their new employer allegedly created a substantially similar process. As discussed above, these

circumstances plausibly state a claim of trade-secret misappropriation. *See Stratienko*, 429 F.3d at 600.

In their motion to dismiss, Adler and Thomson don't wrestle with these "access" and "similarity" points, but instead focus primarily on innocent explanations for their use of USB drives at TRIGO. For example, they contend that their admitted use of USB drives "predated any engagement with OEM" and was not suspicious, because they "needed to access files [at TRIGO] to perform their jobs." (ECF 8, at 19.) Perhaps they are right, but this argument directly contradicts the complaint, which states: "There is not a legitimate business purpose at TRIGO ADR for any employee to use USB devices even minimally . . . ." (ECF 6, at 13.) At this stage, the Court "must accept as true all of the [factual] allegations" in the complaint. *Iqbal*, 556 U.S. at 678. The defense cannot prevail on a motion to dismiss by merely championing contrary facts. And even if the Court accepted that TRIGO employees had a longstanding history of routine USB use, the complaint sufficiently alleges that Adler's and Thomson's USB use was not routine and instead indicative of trade-secret theft. In particular, the complaint highlights their "rampant use of USB devices, particularly in their final days and just after opening trade secret files." (ECF 6, at 23.)

Giving plaintiff the benefit of all "reasonable inference[s]" from the pleadings, *Iqbal*, 556 U.S. at 678, the complaint plausibly alleges that Adler and Thomson downloaded information that OEM then used to replicate TRIGO's vetting process and internal intranet-based analytical tool. The motion to dismiss the trade-secret claims is denied.

**B.    All Other Claims: Preemption**

Defendants argue that TRIGO's remaining five state-law claims are preempted by the California trade-secret claim and must be dismissed. (ECF 8, at 24–25.) Because the California Uniform Trade Secrets Act has a "comprehensive structure and breadth, courts have found that breadth suggests a legislative intent to preempt the common law." *Zoom Imaging Sols., Inc. v. Roe*, No. 2:19-cv-01544-WBS-KJN, 2019 WL 5862594, at *5

(E.D. Cal. Nov. 8, 2019) (cleaned up); *see also* Cal. Civ. Code § 3426, *et seq*. CUTSA preempts noncontractual "common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018). By contrast, a common-law claim avoids preemption if its facts are merely "similar to, but distinct from, those underlying the misappropriation claim." *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *7 (E.D. Cal. July 25, 2013).

With these preemption principles in mind, the Court considers each of the five challenged claims. To survive, TRIGO's common-law claims must be "based on more than just the misappropriation of Plaintiffs' trade secrets." *See Leatt Corp. v. Innovative Safety Tech., LLC*, No. 09-CV-1301-IEG (POR), 2010 WL 2803947, at *6 (S.D. Cal. July 15, 2010).

### 1. *Tortious Interference with Business Relations and Interference with Prospective Economic Advantage*

TRIGO brings two state tort "interference" claims against all defendants: tortious interference with business relations and interference with prospective economic advantage. But both claims are "based on the same nucleus of facts" as the trade-secrets claim. *See Prostar*, 360 F. Supp. 3d at 1006. After all, TRIGO rests both interference claims on the allegation that defendants "immediately used these trade secrets in competition with TRIGO ADR . . . to solicit the business of various suppliers and customers . . . ." (ECF 6, at 22.) Although TRIGO incorporates "non-trade secret-related allegations" into their interference causes of action—claiming defendants "openly boast" about using TRIGO's processes on "OEM's website"—these allegations "do not serve as the basis" of the interference claims and "explicitly refer to . . . trade[-]secrets claims." *See RSPE Audio Sols., Inc. v. Vintage King Audio, Inc.*, No. CV 12-06863 DDP PJWX, 2013 WL 100178, at *2 (C.D. Cal. Jan. 7, 2013); (ECF 6, at 22). Without some other "independently wrongful act," both interference claims are preempted. *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).

TRIGO argues that if "some of the misappropriated material . . . does not rise to the level of trade secret," defendants' "theft and use of this material is independently actionable." (ECF 6, at 26.) Not so. CUTSA "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011).

Thus, California's trade-secret statute preempts both interference claims.

### 2. *Unfair Competition Law*

TRIGO next charges all defendants with engaging in "unfair, unlawful, fraudulent, and deceptive business practices in direct violation of" California's Unfair Competition Law. (ECF 6, at 27.) The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code. § 17200. Each UCL prong is a "separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Although a UCL claim derives from statute, not the common law, it may nonetheless "be preempted" "if it relies on the same facts as [a] misappropriation claim[]." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 263 (Ct. App. 2009).

As with the interference claims, TRIGO pleads that defendants violated the UCL by "willfully and maliciously stealing TRIGO ADR's trade secrets." (ECF 6, at 27.) Its allegations rely exclusively on the misappropriation of trade secrets, and there are no remaining factual allegations that "can be reassembled to independently support other causes of action." *See Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017).

TRIGO contends that preemption should not be determined now, but at summary judgment. (ECF 9, at 25.) But the UCL claim does not rely on conduct separate and apart from the trade-secret allegations. So, there's no plausibly un-preempted claim to consider at summary judgment. Accordingly, the UCL claim is also preempted and must be dismissed.

### 3. *Breach of the Duty of Loyalty*

TRIGO alleges that Thomson and Adler breached their duty of loyalty to TRIGO while employed there. To state such a claim, a plaintiff must plead: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1016 (N.D. Cal. 2016).

Defendants urge preemption because "there is no material distinction between the facts underlying this claim and Plaintiff's trade secret misappropriation claims." (ECF 8, at 3.) TRIGO contends that the duty-of-loyalty claim is "entirely independent of misappropriation of trade secrets," as it is based on the "plan of having 'moles' work at TRIGO ADR while the two entities are in competition." (ECF 8, at 28.) Yet that distinction, if any, does not come through in the complaint. TRIGO makes two specific factual allegations against Thomson and Adler: that they (1) "provid[ed] TRIGO ADR's competitors with internal and confidential *trade secret* business data that undermined TRIGO ADR's profitability and relationships with customers, and (2) misappropriate[ed] TRIGO ADR's *trade secrets* for the purpose of competing with TRIGO ADR." (ECF 6, at 28 (emphasis added).) As both allegations are based on the transmission of "trade secrets," there is no independent wrongful act that is distinct from the trade-secret claim. Thus, the duty-of-loyalty claim is preempted as well.

### 4. *Aiding and Abetting a Breach of the Duty of Loyalty*

Finally, TRIGO alleges OEM, Clarke, and Nicholas aided and abetted the breach of the duty of loyalty. A theory of aiding and abetting requires "the actual commission of a tort." *Richard B. Levine, Inc. v. Higashi*, 32 Cal. Rptr. 3d 244, 250 (Ct. App. 2005). Since the underlying tort (breach of the duty of loyalty) is preempted, any claim that defendants aided and abetted that tort is similarly preempted. *See Symphony Risk Sols. Ins. Servs. v. Perlite*, No. 24-CV-06437-WHO, 2024 WL 5112479, at *6 (N.D. Cal. Dec. 13, 2024) (finding an "aiding and abetting" claim "preempted by CUTSA" when, like here, it just

7

"incorporate[d] [plaintiff's] trade secrets" claim and had no "independent facts" to support the underlying fiduciary-duty claim).

## LEAVE TO AMEND

Generally, when a pleading "can possibly be cured by additional factual allegations," courts should grant leave to amend at least once before issuing a final dismissal. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). It's possible that some of the pleading defects discussed above may be curable, so plaintiff may amend.

## CONCLUSION

Defendants' dismissal motion is granted in part. The following causes of action are **DISMISSED** with leave to amend:

1. Tortious interference with business relations (claim 3);
2. Intentional interference with prospective economic advantage (claim 4);
3. Unfair competition, Cal. Cal. Bus. & Prof. Code. § 17200 (claim 5);
4. Breach of the duty of loyalty (claim 6); and
5. Aiding and abetting a breach of the duty of loyalty (claim 7).

The motion is otherwise denied. By February 20, 2025, plaintiffs must file any second amended complaint. By March 13, 2025, defendants must respond to the operative complaint.

Dated:  January 23, 2025

Andrew G. Schopler
United States District Judge