UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TRIGO ADR AMERICAS, LLC,

Plaintiff,

v.

OEM LOGISTICS, LLC, et al.,

Defendants.

Case No.: 23-cv-2219-AGS-MMP

**ORDER:**

1. **GRANTING IN PART AND DENYING IN PART TRIGO'S MOTION TO COMPEL; AND**

2. **DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE PORTIONS OF TRIGO'S REPLY**

[ECF Nos. 73, 84]

This is a trade secret action in which Plaintiff Trigo ADR Americas, LLC ("Trigo") contends its former employees, Defendants Steven Clarke, Jay Nicholas, Eric Adler, and Michael Thomson, misappropriated trade secrets they subsequently used while employed by Defendant OEM Logistics, LLC ("OEM"). ECF Nos. 1, 6.[1] Trigo brings claims for misappropriation of trade secrets under both the federal Defend Trade Secrets Act and California Uniform Trade Secrets Act. ECF Nos. 6, 12.

[1] OEM and the four individual defendants are collectively referred to as "Defendants."

Before the Court is Trigo's Motion to Compel Further Discovery Responses. ECF No. 73. Trigo contends the deletion of an individual defendant's personal emails entitles it to greater access to other sources of discovery under Federal Rule of Civil Procedure ("Rule") 37(e), specifically (1) nine additional custodians identified by Trigo, (2) a global search of all OEM employees' email accounts, and (3) the work cell phones of all four individual defendants.[2] *See id.* at 6–9. Defendants filed an opposition, and Trigo replied. ECF Nos. 79, 82. The Court found the matter suitable for determination on the papers and without oral argument pursuant to CivLR 7.1(d)(1) and the undersigned's Civil Chambers Rule X(F). ECF No. 75. The Court held a Status Conference on August 18, 2026, in which the parties addressed issues raised in the motion. ECF Nos. 89, 92.

For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** Trigo's motion.

## I. RELEVANT DISCOVERY BACKGROUND

The Court presumes the parties' familiarity with the facts and discusses them only as necessary for context.

Defendant Eric Adler ("Adler") worked at Trigo until September 29, 2023. ECF No. 73 at 3. According to Trigo, on Adler's last day of employment, he sent eleven email messages from his Trigo-issued email account to his personal Gmail account, eaaircraft@gmail.com. *Id.* (citing First Amended Compl. ¶ 42(e)). Trigo alleges these emails contained confidential, proprietary, and trade secret information, such as a URL to the Textron login portal, screenshots regarding Norris Precision Manufacturing, and its Operation Manager job description. *Id.* Trigo represents additional forensic evidence from Adler's Trigo laptop show multiple customer portals were accessed and customer files were downloaded between September 25 and 29, 2023, the days and hours leading up to

---

[2] Trigo references three additional disputes it acknowledges are not ripe for court resolution. *See* ECF No. 73 at 2; ECF No. 82 at 8–10. Consequently, the Court limits its review to the two ripe disputes. The Court therefore **DENIES AS MOOT** Defendants' motion to strike portions of Trigo's Reply. ECF No. 84.

Adler's final day at Trigo. *See id.* at 3–4. Trigo maintains this evidence "directly implicate[s]" Adler in trade secret theft with his personal Gmail account, which he used to further transmit Trigo's trade secrets. *Id.* at 4.

Trigo sought production of Adler's Gmail account in discovery. However, Adler's Gmail account, or certain emails within it,[3] have been deleted and are not recoverable. ECF No. 73-1 ¶ 2; ECF No. 79-2 at 7, 19. The parties do not indicate when this information came to light.

On May 14, 2026, Adler subpoenaed Google to recover the account and its contents. ECF No. 79-2 at 2–7. Defense counsel continues to communicate with Google to obtain the requested information, but no emails have been recovered. ECF No. 79-1 ¶ 7; ECF No. 92, August 18, 2026 Conf. Tr. 3:5.

## II. LEGAL STANDARD

### A. Motion to Compel Discovery

Rule 26(b)(1) establishes the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

---

[3] The Court notes there is some inconsistency regarding whether the Gmail account itself or emails within the account have been deleted. Defense counsel represents "Defendants sought to recover the account and its contents" through a subpoena to Google. ECF No. 79-1 ¶ 7. Further, in the correspondence with Google, counsel represents "**[t]he email account has been deleted, and our client has no means to retrieve the contents other than through a request to Google**." ECF No. 79-2 at 19 (emphasis in original). Yet, during the August 18, 2026 Status Conference, defense counsel was adamant only certain emails were deleted. ECF No. 92, August 18, 2026 Conf. Tr. 14:9-20. While the precise scope of deletion does not impact the Court's analysis for purposes of this motion, Defendants' own lack of understanding as to the scope of this potential spoliation issue further underscores Trigo's need for discovery.

> benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 34 authorizes a party to request the production of documents and ESI from another party within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). When responding to a request under Rule 34, a party must produce all relevant documents or information in its "possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1).

The Federal Rules provide additional protections against unduly burdensome discovery. For example, a court "must limit the frequency or extent of discovery otherwise allowed by these rules" where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i). Rule 26 also provides a party need not produce ESI "from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B).

The party seeking to compel discovery has the burden of establishing relevance under Rule 26(b)(1). *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021). "Once the propounding party establishes that the request seeks relevant information, the party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (citations modified). In ruling on a motion to compel discovery, the court has discretion to modify the discovery requests rather than sustain the responding party's objections in total. *See Green v. Baca*, 219 F.R.D. 485, 490 (C.D. Cal. 2003).

**B. Spoliation of ESI**

Rule 37(e) governs spoliation of ESI and provides as follows:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

## III. ANALYSIS

Trigo asserts in light of the deletion of Adler's personal emails, the Court should exercise its discretion under Rule 37(e) "to give Trigo more access to discoverable information (1) so that it can find the information transmitted from Adler's gmail account and (2) because Trigo should be afforded alternative means of discovery[.]" ECF No. 73 at 5. Trigo seeks to compel three specific sources of discovery. First, Trigo requests ESI searches of nine additional custodians who are former Trigo and current OEM employees, including what Trigo claims are "focused searches" of each custodian's work laptop and cell phone, as well as personal email accounts, cell phone, and USB devices. *Id.* at 6–7. Second, Trigo argues OEM should expand its search for responsive documents, which it claims has been limited to OEM's "Cloud drive storage documents (MO 365 Drive)" and the work email accounts of the four[4] individual defendants only, to a global search of OEM's employees' email accounts. *Id.* at 6. Third, Trigo moves to compel production of ESI from OEM-provided cell phones for each individual defendant. *Id.* at 8–9.

Defendants contend the deletion of Adler's emails does not warrant broader discovery. ECF No. 79 at 7. Their argument is twofold: first, Rule 37(e) is inapplicable

[4] Although Trigo refers to "five individual defendants" in its motion, only four individual defendants are named in the Amended Complaint—Clarke, Nicholas, Adler, and Thomson. ECF No. 6 ¶¶ 10–13. The fifth defendant is OEM, an entity defendant. *Id.* ¶ 9.

because Trigo has not demonstrated Adler's emails are "lost;" and second, the discovery Trigo seeks is not proper under Rule 26, asserting Trigo's requests are overly broad, unduly burdensome, and not proportional to the case. *Id.* at 7–15.

The Court addresses Defendants' argument that Rule 37(e) is inapplicable before addressing the specific discovery Trigo seeks under Rule 26(b)(1).

### A. The Deletion of Adler's Personal Emails is Relevant Under Rule 37(e)

Defendants argue Rule 37(e) is inapplicable because it only applies where a party has "proven loss of ESI" and Trigo has failed to prove relevant ESI was "irretrievably lost [and] cannot be restored or replaced[.]" ECF No. 79 at 7. The Court finds this argument disingenuous, as Defendants (i) acknowledge Adler's account and emails are relevant, (ii) admit the account and emails have been deleted, and (iii) represent they have not been able to restore the account or its contents, despite serving a third-party subpoena to Google. *Id.* at 8; 79-1 ¶ 7; 79-2 at 19 ("The email account has been deleted" and "the complete account contents are directly relevant to issues in the litigation").[5]

Nevertheless, Defendants are correct there is still an open question as to whether Adler's emails can be "replaced" within the meaning of Rule 37(e). *See* Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015 Amendment ("It applies only when such information is lost. Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."). But that does not render Rule 37(e) entirely inapplicable. To the contrary, it makes the existence of "substitute information" relevant and discoverable. *See id.* Moreover, while it would be premature to determine the issue of sanctions under Rule 37(e) on this record, that is not the relief Trigo currently seeks.

---

[5] While Defendants claim in their motion "the results of [the subpoena] are yet undetermined" and they "continue to communicate with Google to obtain the requested information[,]" defense counsel has since confirmed they "have not been able to retrieve emails" from Google. *Compare* ECF Nos. 79 at 8 *and* ECF No. 79-1 ¶ 7 *with* ECF No. 92, August 18, 2026 Conf. Tr. 3:5.

Rather, Trigo seeks additional discovery to determine whether the contents of Adler's emails exist elsewhere and can be replaced. "Whether the deleted or migrated email accounts and their contents can be restored or replaced by additional discovery is the key question under Rule 37(e)(1)." *Hugler v. Sw. Fuel Mgmt., Inc.*, No. 16-cv-4547-FMO-AGRX, 2017 WL 8941163, at *9 (C.D. Cal. May 2, 2017). Trigo also identifies numerous unanswered questions relevant to the Rule 37(e) analysis, including when and how Adler's emails were "inadvertently deleted" and what reasonable steps, if any, were taken to preserve the emails. ECF No. 82 at 4. Because Rule 37(e) governs spoliation, the deletion of Adler's emails makes Rule 37(e) relevant and applicable. Trigo is entitled to discovery on these issues.

Defendants unpersuasively attempt to distinguish several Rule 37(e) cases based on a showing ESI had been completely lost. *See* ECF No. 79 at 9 (citing *Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 5:18-cv-420-JGB-SHK, 2020 WL 1491339, at *1 (C.D. Cal. Mar. 27, 2020) and *Hugler*, 2017 WL 8941163, at *9). The Court finds *Hugler* instructive. There, email accounts were deleted or migrated, and, like here, it was undisputed the accounts contained relevant information. *Hugler*, 2017 WL 8941163, at *9. The parties had not addressed whether the email providers maintained backups for the email accounts, so the court denied Rule 37(e) sanctions. In attempting to distinguish *Hugler*, Defendants overlook a critical fact: the court expressly "denied the motion *without prejudice to renewal at a later date*, after [the moving party] explores whether the deleted or migrated email accounts and their contents . . . can be restored or replaced through additional discovery." *Id.* (emphasis added). This situation is no different. Defendants acknowledge the deleted emails are relevant and cannot be recovered from Adler or Google. Therefore, Trigo is entitled to explore whether the same ESI exists elsewhere from other sources. Without this information, the Court cannot determine whether Adler's Gmail account or its contents are "lost" for purposes of Rule 37(e).

Defendants' other arguments are also not convincing. Defendants assert the fact Trigo already has access to the contents of the eleven emails sent *from* Adler's Trigo

account *to* his Gmail account show “relevant information is available from Trigo’s systems, not uniquely dependent on the deleted personal account.” ECF No. 79 at 8. This argument misses the point. As Trigo counters, it seeks discovery of Adler’s deleted emails to determine what, if anything, Adler did with the alleged trade secrets *after* receiving them in his personal account. ECF No. 82 at 3–4. Trigo does not have access to this information.

In sum, the deletion of Adler’s emails raises a potential spoliation issue, which is governed by Rule 37(e). Trigo is therefore entitled to discovery on issues relevant to the Rule 37(e) analysis, including whether Adler’s deleted emails are “lost because a party failed to take reasonable steps to preserve it” or the emails can “be restored or replaced through additional discovery[.]” *See* Fed. R. Civ. P. 37(e). To that end, the Court authorizes Trigo to depose Defendant Adler specifically regarding the deletion of his account and its contents for up to two (2) hours.[6] This deposition is in addition to the general limits set forth in Rules 30(a)(2)(A) and 30(d)(1). Defendant Adler must be made available for deposition on this issue within thirty (30) days of this Order.

The Court next considers the specific discovery Trigo seeks.

**B. Trigo Has Not Established the Nine Additional Custodians Are Relevant**

Trigo moves to compel production of ESI from nine additional custodians who are former Trigo employees and currently work for OEM.[7] ECF No. 73 at 6. Trigo seeks what it describes as “focused searches” of each custodian’s work laptop and cell phone, as well as personal accounts and devices (email, cell phone, USB devices, and other devices or

---

[6] During the August 18, 2026 Status Conference, Trigo’s counsel indicated Adler had not yet been deposed in the case. ECF No. 92, August 18, 2026 Conf. Tr. 7:13-22.

[7] The nine individuals are: (1) Brandt Jenkins, (2) Erik Stevens, (3) Amy Downs, (4) Robert Meister, (5), Nicola Lindsey, (6) Terry Morgan, (7) Todd McKinney, (8) Chris Upton, and (9) Brad Smith.

repositories where "they reasonably believe that responsive information may exist[.]").[8] *Id.*

On this record, Trigo has not established the relevance of these custodians to the claims and defenses in this action under Rule 26(b)(1). As the declaration of Steffen Spell makes clear, Trigo has identified these additional individuals based entirely on their former work at Trigo, not through any discovery, connection to this case, or their work at OEM. *See* ECF No. 73 at 6–8; ECF No. 73-2 ¶ 2. Trigo does not claim any connection to Adler's deleted emails. Further, as Defendants point out, for seven of the nine individuals, Trigo fails to allege any involvement with customers Trigo claims to have lost to OEM while they worked at Trigo. ECF No. 79 at 11–13. For the remaining two individuals, the Court agrees with Defendants that Trigo's unsupported assertions based on the employees' former work at Trigo alone, without more, does not establish relevance to this trade secret action.

In addition, Trigo's request is not proportional. Despite Trigo's nomenclature, its request is not focused but expansive. The burden and expense for Defendants to comply with such a broad request outweighs the speculative benefit, if any.

Because the request is neither relevant nor proportional, the Court **DENIES** Trigo's request for the nine additional custodians.

### C. OEM Must Produce Emails Sent to or Received from Adler's Gmail Account

Trigo also requests OEM expand its search for responsive documents to include a global search of all its employees' work email accounts for Trigo's search terms. ECF No. 73 at 6.

Though Defendants acknowledge Trigo's request in passing, they do not specifically address it. *See* ECF No. 79 at 9. Rather, they contend generally Trigo's requests for

---

[8] Trigo specifies requiring the custodian to search the personal accounts and devices. ECF No. 73 at 6.

additional custodians and searches are not proportional in light of the significant discovery already undertaken: specifically, they have agreed to run 92 of the 94 search terms requested by Trigo across all existing custodians and have already produced files and run additional searches regarding the three USBs. ECF No. 79 at 16; ECF No. 79-1 ¶¶ 4–5.

The Court **GRANTS** Trigo's request as modified: OEM must produce all emails, either sent to or received from, Adler's Gmail account, eaaircraft@gmail.com, on or after January 1, 2023. OEM's search for responsive ESI must include, at least, all OEM employee emails and repositories in OEM's possession, custody, or control. The Court finds this request, as modified, is directly relevant to Trigo's purpose of obtaining additional discovery to replace, if possible, Adler's deleted emails. Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015 Amendment ("[L]oss from one source may often be harmless when substitute information can be found elsewhere."). The request as modified is also proportional to the needs of the case considering the importance of the emails, Adler and OEM's exclusive access to this information, and OEM's resources. Further, the likely benefit of the discovery significantly outweighs the burden or expense on this record.

**D. Defendants Must Search Adler's OEM-Provided Cell Phone**

Lastly, Trigo seeks a court order requiring production of ESI from the OEM-provided work phones of the four individual defendants: Clarke, Nicholas, Adler, and Thomson. ECF No. 73 at 8–9. In support of this request, Trigo provides a declaration from Erwin Risher, a Senior Forensic Consultant for Epiq, identifying four general reasons to search a work cell phone[9] in an intellectual property dispute. *Id.*; ECF No. 73-3 ¶¶ 11–16.

In opposition, Defendants assert Trigo has not established the information sought is likely to be found on the device. ECF No. 79 at 14. Defendants also assert Trigo has not attempted to pursue "less intrusive means of discovery, such as targeted interrogatories,

---

[9] According to Risher, it is not clear whether OEM provides a company-issued device to its employees or permits a bring your own device policy. ECF No. 73-3 ¶ 10. Trigo, however, clarifies it "is not seeking to search the custodians' personal cell phones" but rather "their cell phones issued by OEM only for use for work[.]" ECF No. 73 at 9.

requests for admissions, or depositions to determine whether any individual defendants used [their] work cell phone provided by OEM to store or transmit Trigo-related information." ECF No. 79 at 15.

In reply, Trigo clarifies it seeks only to run "narrow searches" on these cell phones, not production of the contents of the work phones. ECF No. 82 at 7.

Though Trigo's request extends to all four individual defendants' OEM-provided cell phones, the Court finds such an expansive request neither relevant nor proportional on this record. Trigo does not allege any connection between Adler's deleted personal emails and the other three defendants' OEM-provided work cell phones. Moreover, as Trigo acknowledges, all four individual defendants are already ESI custodians subject to Defendants' existing collection and production efforts. *See* ECF No. 73-1 ¶ 3. The Court finds, without more, the discovery sought from the three other individual defendants is unreasonably cumulative, duplicative, and not proportional.

However, in light of the significant circumstances presented here by the deletion of Adler's emails, the Court finds production of ESI from Adler's OEM-provided cell phone both relevant and proportional to the needs of the case. As Trigo clarifies it seeks only to run searches on Adler's cell phone(s), Trigo must provide Defendants with a proposed protocol of specific, narrowly-tailored searches within seven (7) days of this Order.

The Court has carefully considered Defendants' arguments to the contrary and found them generally inapplicable in light of the specific facts presented by Adler's deleted emails. For example, Defendants represent "[t]he relevant documents in this case are primarily on OEM's system, which has already been searched and collected." ECF No. 79 at 13. While this argument may apply generally to what Defendants describe as the "material business documents" in the case, the Court is not persuaded it applies to the current issue: the contents of Adler's deleted personal emails, and whether they exist elsewhere, such as in Adler's work phone. Moreover, Defendants acknowledged they had not yet specifically searched for any emails from Adler's Gmail account. ECF No. 92, August 18, 2026 Conf. Tr. 8:10-19.

Defendants also assert Trigo fails to identify a specific "document, communication, or file that was transmitted to, stored on, or accessed from any OEM-issued phone." ECF No. 79 at 14. But that is precisely the point—Trigo cannot identify an email or document that was deleted and never produced. Defendants' argument that Trigo has not identified "any gap in discovery" fails for the same reason. *Id.* at 15.

Though Defendants cite the Court's informal guidance provided in an earlier discovery conference on April 22, 2026, the Court's statements did not address Adler's deleted emails specifically, much less regarding the existence of the email content from other sources. *Id.* (citing April 22, 2026 Conf. Tr. 37:16–38:20). Rather, the Court expressly tethered its initial guidance to OEM's "work documents." ECF No. 68, April 22, 2026 Conf. Tr. at 38:3-4.

Finally, requiring ESI searches of Adler's OEM-provided work phone is proportional to the needs of the case considering the importance of Adler's emails and other ESI, the amount in controversy, and Trigo's lack of independent access to this information. Although Defendants generically claim the burden and expense is substantial at this stage in the case, it is of Adler's own making and is outweighed by the likely benefit of the discovery.

In sum, the Court finds in light of the extraordinary circumstances presented by the deletion of Adler's personal emails, the likely benefit of searching his OEM-provided work cell phone outweighs the burden or expense to OEM on this record. The Court requires OEM to search any OEM-provided cell phone of Defendant Adler for the relevant time period. Accordingly, the Court **GRANTS IN PART** Trigo's request as to **Defendant Adler only** and **DENIES** the request as to Defendants Clarke, Nicholas, and Thomson.

/ /

/ /

/ /

/ /

/ /

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Trigo's Motion to Compel, ECF No. 73, and **DENIES AS MOOT** Defendants' Motion to Strike Portions of Trigo's Reply, ECF No. 84.

The Court **ORDERS** as follows:

1. The Court authorizes Trigo to depose Defendant Adler specifically on the deletion of emails from his personal Gmail account for up to two (2) hours in addition to the general deposition limits set forth in Rule 30. Defendant Adler must be made available for this deposition **<u>within thirty (30) days of this Order</u>**.

2. The Court finds Trigo's request for a court order requiring searches of nine additional custodians is neither relevant nor proportional and **DENIES** the request.

3. The Court finds Trigo's request for an email search of OEM employees relevant and proportional to the needs of the case as modified by the Court. No later than **<u>October 30, 2026</u>**, OEM must produce all emails, either sent to or received from, Adler's Gmail account, eaaircraft@gmail.com, on or after January 1, 2023. OEM's search for responsive ESI must include a reasonably diligent search of all OEM employee emails and repositories in OEM's possession, custody, or control since January 1, 2023.

4. The Court finds Trigo's request for a search of the OEM-provided cell phone(s) relevant and proportional to the needs of the case as to **Defendant Adler only**. The parties **SHALL** comply with the following:

   a. No later than **<u>October 9, 2026</u>**, Trigo must provide Defendants with proposed specific and narrowly-tailored searches to run on Adler's OEM-provided cell phone(s).

   b. If Defendants object to the proposed searches, then lead counsel must meet and confer **in person** within seven (7) days.

   c. If the parties are unable to resolve their disagreements as to the search, then they must submit a joint request for a discovery conference within three (3)

business days of the meet and confer. Their joint request must include (i) Trigo's original proposal, and (ii) Defendants' objections.

d. If the parties reach an agreement as to the proposed search, OEM must search any OEM-provided cell phone of Defendant Adler and produce all responsive ESI in its possession, custody, or control **within thirty (30) days**.

**IT IS SO ORDERED**.

Dated: October 2, 2026

HON. MICHELLE M. PETTIT
United States Magistrate Judge